1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST LEE ALLEN, | CV F 01-5994 OWW DLB HC |
|           Petitioner, | ORDER DENYING PETITIONER'S MOTION FOR DISCOVERY AND/OR APPOINTMENT OF GUARDIAN AD LITEM (Court Doc. 67) |
|   v. | |
| ART CALDERON, | FINDINGS AND RECOMMENDATION REGARDING AMENDED PETITION FOR WRIT OF HABEAS CORPUS (Court Doc. 7) |
|           Respondent. | |
| _____/ | |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is represented by Carolyn D. Phillips, Esq.

## PROCEDURAL BACKGROUND

Petitioner is currently in the custody in the State of California pursuant to a judgment and sentence of the California Superior Court, County of Fresno.  Following a jury trial, Petitioner was found guilty of one count of spousal abuse (Cal. Penal Code § 273.5).[1]  Petitioner also plead guilty to one count of misdemeanor battery (Penal Code § 242).  Petitioner was sentenced to 25-years-to-life pursuant to Penal Code section 667(b)-(i).  (Lodged Doc. No. 1 at 2-3.)

Petitioner filed a timely notice of appeal.  The California Court of Appeal, Fifth Appellate District affirmed Petitioner's conviction and sentence.  (Lodged Doc. No. 1.)

Petitioner then filed a petition for review in the California Supreme Court.  (Lodged Doc. No. 2.)  The petition was denied on August 18, 1999.  (Lodged Doc. No. 3.)

Petitioner filed a petition for writ of habeas corpus with the California Superior Court for

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

1  the County of Fresno on December 10, 2000.  (Lodged Doc. No. 4.)  The petition was denied on

2  December 21, 2000.  (Lodged Doc. No. 5.)

3        On February 9, 2001, Petitioner signed a petition for writ of habeas corpus which was

4  filed in the Fifth District Court of Appeal.  (Lodged Doc. No. 6.)  The petition was denied on the

5  merits on February 22, 2001.  (Lodged Doc. No. 7.)

6        On April 5, 2001, Petitioner filed a petition for writ of habeas corpus in the California

7  Supreme Court.  (Lodged Doc. No. 8.)  The petition was denied on the merits on July 25, 2001.

8  (Lodged Doc. No. 9.)

9        The instant federal petition for writ of habeas corpus was filed on August 2, 2001.

10  Subsequent to a remand from the Ninth Circuit, Respondent filed an answer to the petition on

11  May 30, 2006, and Petitioner filed a traverse on August 25, 2006.  (Court Docs. 41, 49.)

12                    STATEMENT OF FACTS[2]

13        [Petitioner] and Lorraine Edwards (Edwards) lived together and had one
child.  On the afternoon of September 2, 1997, they went to the Department of

14  Social Services in Fresno County. [Petitioner] had been drinking.  While waiting
in line, he began to yell at Edwards about an argument he had had with Edward's

15  brother-in-law.  After threatening to beat her, [Petitioner] grabbed Edwards by her
shirt and dragged her kicking and screaming across the floor.  He pushed her

16  through the front doors and threw her down on the sidewalk.  A security guard
intervened just as [Petitioner] raised his hand to strike her. [Petitioner] ran away

17  threatening to return later.

18  (Lodged Doc. No. 1 at 2.)

19                       DISCUSSION

20  A.    Jurisdiction

21        Relief by way of a petition for writ of habeas corpus extends to a person in custody

22  pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

23  or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

24  529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered

25  violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises

26

27        [2] The Court finds the Court of Appeal correctly summarized the facts, in its opinion, presented as Lodged
Document No. 1.  Thus, the Court adopts the factual recitations set forth by the California Court of Appeal, Fifth

28  Appellate District.

1 out of the Fresno County Superior Court, which is located within the jurisdiction of this Court.

2 28 U.S.C. § 2254(a); 2241(d).

3     On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

4 of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

5 enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114

6 F.3d 1484, 1499 (9th Cir. 1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting

7 Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct.

8 1114 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

9 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

10 petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

11 B.    Standard of Review

12     This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

13 custody pursuant to the judgment of a State court only on the ground that he is in custody in

14 violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

15     The AEDPA altered the standard of review that a federal habeas court must apply with

16 respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v.

17 Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus

18 will not be granted unless the adjudication of the claim "resulted in a decision that was contrary

19 to, or involved an unreasonable application of, clearly established Federal law, as determined by

20 the Supreme Court of the United States;" or "resulted in a decision that was based on an

21 unreasonable determination of the facts in light of the evidence presented in the State Court

22 proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of

23 the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v.

24 Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply

25 because that court concludes in its independent judgment that the relevant state-court decision

26 applied clearly established federal law erroneously or incorrectly."  Lockyer, at 1175 (citations

27 omitted).  "Rather, that application must be objectively unreasonable."  Id. (citations omitted).

28     While habeas corpus relief is an important instrument to assure that individuals are

1  constitutionally protected, <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

2  (1983); <u>Harris v. Nelson</u>, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

3  criminal conviction is the primary method for a petitioner to challenge that conviction.  <u>Brecht v.</u>

4  <u>Abrahamson</u>, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

5  factual determinations must be presumed correct, and the federal court must accept all factual

6  findings made by the state court unless the petitioner can rebut "the presumption of correctness

7  by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); <u>Purkett v. Elem</u>, 514 U.S. 765, 115

8  S.Ct. 1769 (1995); <u>Thompson v. Keohane</u>, 516 U.S. 99, 116 S.Ct. 457 (1995); <u>Langford v. Day</u>,

9  110 F.3d 1380, 1388 (9th Cir. 1997).

10  C.    <u>Procedural Default/Statute of Limitations</u>

11        In his answer, Respondent argues that the instant petition is procedurally defaulted and

12  barred by the one-year statute of limitations.  In opposition, Petitioner argued that he was entitled

13  to equitable tolling and requested permission to expand the record to develop the factual basis to

14  support his claim.  On December 4, 2007, the Court directed Petitioner to submit all

15  documentation in support of his request to expand the record.  (Court Doc. 55.)  On April 8,

16  2008, Petitioner filed a motion to conduct discovery or, in the alternative, to appoint a mental

17  health expert.  (Court Doc. 67.)  On April 25, 2008, Respondent filed a response requesting that

18  because the petition is fully briefed on the merits, this Court "skip over" the more complicated or

19  time-consuming issue of whether Petitioner was in fact mentally incompetent to receive equitable

20  tolling, and render a decision on the merits of the petition.[3]   Petitioner has not filed an opposition

21  to Respondent's suggestion.

22        As a general rule, the statute of limitations is a threshold issue to be resolved before the

23  merits of individual claims.  <u>See</u> <u>White v. Klitzkie</u>, 281 F.3d 920, 921-22 (9th Cir. 2002).

24  However, a federal court is not required to rule on the statute of limitations bar if the petition

25  may be denied on other grounds.  <u>Pough v. United States</u>, 442 F.3d 959, 965 (6th Cir. 2006); cf.

26  <u>Franklin v. Johnson</u>, 290 F.3d 1223, 1232 (9th Cir. 2002) (federal courts are authorized to skip a

27

28        [3] Respondent does not wish to waive the statute of limitations defense and requests to reserve the right to litigate the defense, if the Court is inclined to grant the writ.

1  relatively complicated procedural default question and proceed to deny the claim on the merits);

2  cf. Carr v. Cigna Securities, Inc., 95 F.3d 544, 547 (7th Cir. 1996) (choosing to "skip over the

3  tangled statutes of limitations issues" to "come directly" to the merits of the claims).

4       The Court agrees with Respondent and finds that the interests of the parties would be best

5  served by "skipping over" the statute of limitations bar and rendering a decision on the merits of

6  the petition. See e.g. Curtis v. Giurbino, CIV-S-01-1562 GEB DAD P; Leiva v. Woodford, CV F

7  04-6669 AWI WMW HC; Stokely v. McGraft, CV F 01-6030 AWI WMW HC; Lopez v.

8  Kernan, CIV S-04-1316 MCE JFM P (considered and engaged in such procedure).

9       In light of this ruling, Petitioner's motion for discovery and appointment of a guardian ad

10  litem to address the issue of equitable tolling, filed on April 8, 2008, is MOOT, and shall be

11  denied on that basis.

12  D.    Ineffective Assistance of Trial Counsel

13       Petitioner contends that his trial counsel rendered ineffective assistance by failing to

14  adequately advise him regarding his decision to testify.  Petitioner raised this claim in the

15  California Supreme Court by way of petition for writ of habeas corpus.  (Lodged Doc. No. 8.)

16  The Court denied the petition on the merits without comment.  (Lodged Doc. No. 9.)

17       In such circumstances, AEDPA's strict standard of review is relaxed when the state court

18  reaches a decision on the merits but provides no reasoning to support its conclusion. Under such

19  circumstances, the federal court must "independently review the record to determine whether the

20  state court clearly erred in its application of Supreme Court law." Brazzel v. Washington, 491

21  F.3d 976, 981 (9th Cir.2007), quoting Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir.2002);

22  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.2000) ("Federal habeas review is not de novo when

23  the state court does not supply reasoning for its decision, but an independent review of the record

24  is required to determine whether the state court clearly erred in its application of controlling

25  federal law.").

26       Petitioner's claim amounts to nothing more than an unsupported allegation that his trial

27  counsel failed to adequately advise of the consequences before choosing to testify.  Such a

28  conclusory and unsupported claim fails to provide a basis upon which this Court can grant relief

1   under § 2254. <u>Strickland</u>, 466 U.S. at 687; <u>United States v. Quintero-Barraza</u>, 57 F.3d 836, 840

2   (9th Cir. 1995) (defendant bears burden of establishing incompetence of counsel).   Petitioner

3   does not contend that he did not testify freely on his own will or that counsel forced him to

4   testify.   Petitioner merely alleges that his testimony opened the door for questioning regarding his

5   priors and had been advised so he would not have testified.

6          Petitioner's allegation is unsupported by the record or any other evidence.  Indeed,

7   outside the presence of the jury, and just prior to Petitioner taking the witness stand, the trial

8   court discussed Petitioner's decision to testify on his own behalf.  During this discussion, of

9   which Petitioner was present, the following exchange occurred:

10          MS. GRIGGS [prosecutor]: Your Honor, this defendant will, apparently
    choose to testify.  Therefore, the People will be offering into evidence for the
11   purpose of impeachment his two prior serious felony convictions.  The first, a
    conviction on July 19th, 1985, for voluntary manslaughter with use of a firearm.
12   The second for assault with a deadly weapon, again on July 19th, 1995 - - excuse
    me, 1985, including an allegation of great bodily injury.  And I simply wanted to
13   make the court aware of that so the court could do the Castro weighing prior to his
    testimony.

14
          MR. REKOON [defense counsel]: I would ask that the priors be sanitized
15   to the degree of involving moral turpitude as it would reflect on his credibility.
    No on – since we don't intend to get into it on any character traits for violence or
16   nonviolence.  Obviously, the priors, since they go to moral turpitude, could be
    admissible for that purpose if the court finds that their not stale.  Twelve years old
17   from the – well, two incidents or one incident on the same date 12 years ago,
    almost 13 years ago.

18
          I intend to ask Mr. Allen if he has ever been convicted of felonies as it - - I
19   don't intend to hide anything from the jury.  However, I would await the court's
    ruling as to how far I would be allowed to go in terms of the details.  I would ask
20   only to be allowed to go into the fact of a felony conviction as it pertains to moral
    turpitude and character for honesty.

21
          .................................................................................................................
22
          THE COURT: Well, I - - I think considering all of the history of Mr.
23   Allen that these convictions in '85 are not remote.  While the crimes for which he
    was convicted in '85 involve a high degree of violence and this is a crime
24   involving violence, they are not identical.  They do have that similarity.  However,
    the crimes for which he was convicted in '85 carry a high degree of moral
25   turpitude, which makes them highly relevant on the issue of credibility of the
    witness.  And I think the ability of the jury to evaluate and weigh the probative
26   value of that on the issue of credibility is removed if there's simply a reference to
    his having been convicted of a couple of felonies involving moral turpitude.

27
          This is not a - - a situation where the court's ruling is going to affect the
28   defendant's decision to testify.  I think the probative value of admitting these

                                            6

1  convictions is - - is highly relevant and probative on the issue of credibility and
   outweighs any probative undue prejudice under 352.  And, therefore, I'm going to
2  admit them both as they are, which would permit counsel to refer to the - - the
   crime name and the date of conviction.

3  (RT 693-698.)

4
5  After further discussion, it was agreed by the parties and the court that the reference to the

6  prior convictions would be to a voluntary manslaughter and assault with a deadly weapon in

7  1985.  (RT 699.)

8  To this end, when Petitioner took the witness stand, defense counsel questioned as

   follows:
9
       Q. And have you ever been convicted previously of any felonies:
10      A. Yes.
       Q. Was that in 1985?
11      A. Yes.
       Q. What were those felonies?
12      A. Manslaughter charge and assault with a deadly weapon.
       Q. Okay.  And you served time for those offenses?
13      A. Yes, I did.

14 (RT 700-701.)

15      At no time during the court's discussion regarding the prior convictions or questioning by

16 defense counsel did Petitioner voice any objection or request any clarification concerning his

17 prior convictions.[4]  In fact, Petitioner testified exactly as the trial court ruled in referencing his

18 prior convictions.  Accordingly, Petitioner's claim that he was not advised that he could and

19 would be impeached with his prior convictions if he chose to testify is inconsistent with the

20 record.

21      Moreover, there was strong evidence of Petitioner's guilt.  The victim's testimony (RT

22 677-680) was corroborated by several eyewitnesses who described that Petitioner grabbed the

23 victim by the shirt and dragged her across the floor out of the CPS office as she was kicking and

24 screaming (see RT 616-620, 627-630, 635-641).  Through his testimony, Petitioner attempted to

25 explain that he did not drag her on the floor, he simply pulled her towards him and led her out of

26 the building, where she tripped over the foot of a witness.  (RT 705-710, 726-729.)    The mere

27

28      [4] Indeed, it is quite common for defense counsel to elicit testimony regarding prior convictions in an
   attempt to take the sting out of any impeachment.  See e.g. Smith v. Stewart, 140 F.3d 1263, 1273 (9th Cir. 1998).

fact that the jury did not believe Petitioner's testimony is insufficient to establish that counsel

was ineffective.  Given the strong evidence of Petitioner's guilt, he simply cannot establish that

counsel was ineffective for allowing him to testify or that he was prejudiced thereby, and his

claim fails under <u>Strickland</u>.

E.      <u>Ineffective Assistance of Appellate Counsel</u>

Petitioner contends that his appellate counsel was ineffective for failing to adequately

raise the grounds listed in his notice of appeal.  In support of his claim, Petitioner attached a copy

of his notice of appeal.  (See Exhibit C, to Petition.)  Petitioner raised this claim to the California

Supreme Court by way of petition for writ of habeas corpus.  (Lodged Doc. No. 8.)  As with

Petitioner's prior claim, the California Supreme Court denied the petition on the merits without

comment.  (Lodged Doc. No. 9.)

Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the

Fourteenth Amendment.  <u>Evitts v. Lucey</u>, 469 U.S. 387, 391-405 (1985).  Claims of ineffective

assistance of appellate counsel are reviewed according to <u>Strickland 's</u> two-pronged test.  <u>Miller</u>

<u>v. Keeney</u>, 882 F.2d 1428, 1433 (9th Cir.1989)*;* <u>United States v. Birtle</u>, 792 F.2d 846, 847 (9th

Cir.1986); <u>See</u> <u>also</u> <u>Penson v. Ohio</u>, 488 U.S. 75, 109 S.Ct. 346, 353-54 (1988) (holding that

where a defendant has been actually or constructively denied the assistance of appellate counsel

altogether, the <u>Strickland</u> standard does not apply and prejudice is presumed; the implication is

that <u>Strickland</u> does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things.  First, he must establish that appellate

counsel's deficient performance fell below an objective standard of reasonableness under

prevailing professional norms.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 104 S.Ct. 2052,

2064 (1984).  Second, Petitioner must establish that he suffered prejudice in that there was a

reasonable probability that, but for counsel's unprofessional errors, she would have prevailed on

appeal. <u>Id</u>. at 694. A "reasonable probability" is a probability sufficient to undermine confidence

in the outcome. <u>Id</u>. The relevant inquiry is not what counsel could have done; rather, it is whether

the choices made by counsel were reasonable. <u>Babbitt v. Calderon</u>, 151 F.3d 1170, 1173 (9th

Cir.1998). The presumption of reasonableness is even stronger for appellate counsel because he

1   has wider discretion than trial counsel in weeding out weaker issues; doing so is widely

2   recognized as one of the hallmarks of effective appellate assistance. Miller v. Keeney, 882 F.2d

3   1428, 1434 (9th Cir.1989).  Appealing every arguable issue would do disservice to the Petitioner

4   because it would draw an appellate judge's attention away from stronger issues and reduce

5   appellate counsel's credibility before the appellate court. Id.  Appellate counsel has no

6   constitutional duty to raise every nonfrivolous issue requested by petitioner. Id at 1434 n10

7   (citing Jones v. Barnes, 463 U.S. 745, 751-54, 103 S.Ct. 3308 (1983)).

8          Petitioner references his notice of appeal which states that he was appealing from the

9   judgment and sentence "because court erred in not granting defense request for mistrial."

10  (Exhibit C to Petition.)

11         In his traverse, counsel for Petitioner states that "[a]n additional basis for ineffective

12  assistance of trial counsel should have been included in [Petitioner's] habeas petitions: Failure of

13  trial counsel to make Romero motion regarding two priors which arose from same incident

14  pursuant to People v. Benson, 18 Cal.4th 24, 36, fn.8 (1998)...."  (Traverse, at 25.)  This claim is

15  both tardy and unexhausted and Petitioner may not raise it for the first time in his traverse.

16  Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (district court need not consider

17  habeas claim raised for the first time in traverse).  Although Petitioner raised a related claim to

18  the California Supreme Court, i.e., that the trial court erred by failing to grant a motion for a new

19  trial and allowing the case to be reopened (see Lodged Doc. No. 8), the claims proposed in the

20  traverse are based on trial counsel's alleged incompetence for failing to (1) make a motion for

21  mistrial after the jury modified its original verdict of "not guilty" without the additional evidence

22  regarding the September 2, 1997 charge; (2) poll the jury; (3) move to set aside the verdict, or (4)

23  use the jury's original verdict of "not guilty" to bolster his Penal Code 17(b) motion.  These

24  proposed new claims raise substantively different claims that are unexhausted and will not be

25  addressed in the instant petition.  Review of this claim is limited to whether appellate counsel

26  was ineffective for failing to challenge the trial court's alleged error in not granting the motion

27  for mistrial.

28         In addition, on June 3, 2008, Petitioner filed a motion to amend the petition to add the

new (omitted) claim that the trial court erred in reopening the case and not accepting the verdict as initially rendered.[5] (Court Doc. 70.) On October 29, 2008, the Court denied Petitioner's motion finding that the amendment was untimely and did not relate back to the amended petition. (Court Doc. 74.) Petitioner's arguments in his traverse relating to the trial court's (and counsel's) alleged error in reopening the case and not accepting the jury's initial verdict, will not be addressed as the claim is not before this Court.

After the presentation of the evidence and while the jury was deliberating, the prosecutor informed the trial court that she received information from her investigator that Petitioner may not have been the biological father of one of the victim's children.[6] (RT 901-905.) In response, defense counsel requested that jury deliberations be suspended and paternity testing conducted, and depending on the results to either reopen, dismiss, or declare a mistrial. (RT 902.) The court declined to suspend deliberations, and requested that the victim and investigator both testify under oath. The court further stated "[i]t may be that the court can or cannot record a verdict or accept a verdict, but I don't know one way or the other yet until I find out what information we elicit." (RT 904.) Based on the victim's testimony, under oath, that she did not believe Petitioner was the father of Ernest Lee Berry Allen, Jr. (the basis upon which Count One was charged; CT 51-52), the prosecution reduced this count to misdemeanor battery, to which Petitioner pled guilty. (RT 914, 1001-1004.) The court did not receive or review the jury's verdict and the jury was instructed to disregard Count One. (RT 1003, 1011.) Defense counsel agreed to the reduction on Count One, stating:

> I would just add that I'm in agreement with what the prosecutor has said. I would like to add that our decision not to proceed with the request for paternity testing is based, number one, on the fact that the felony count of the 273.5 occurring on August 31, 1996, is being dismissed, therefore, my client would not be prejudiced by lack of a paternity test on that count. I'm not asking for paternity test for Jakari as it relates to the September 2nd, '97, incident because of my belief there are sufficient grounds for the jury to find under a cohabitation theory the

---

[5] The initial verdicts rendered by the jury, which was not accepted or reviewed by the trial court were: not guilty as to the September 2, 1997 section 273.5 felony; guilty as to the September 2, 1997 section 242 misdemeanor battery charge; and, guilt as to the August 31, 1996 felony section 273.5 charge. (CT 233-235.)

[6] Under California Penal Code section 273.5, of which Petitioner was charged (and later convicted), requires a relationship between the perpetrator and the victim of either being cohabitants or having a child together.

> same offense, regardless of whether he, in fact, is the father of the child, that cohabitation having been established by the testimony during the case in chief of both the prosecution and the defense that Mr. Allen and Ms. Edwards did testify that they were living together at a motel at the time of the September 2nd incident.

(RT 1002-1003.)

Petitioner's claim fails on the merits. First, Petitioner never made a motion for mistrial, rather, counsel requested paternity testing and if the prosecution wished to pursue the charge as felony, then counsel would move for a mistrial. However, after both counsel discussed the issue off the record, it was agreed the charge would be reduced to a misdemeanor and Petitioner would plead guilty. Defense counsel had no reason to move for a mistrial and any prior request was abandoned. Second, Petitioner pled guilty and admitted the facts underlying the claim for which any motion for mistrial could have been based. See Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602 (1973) (the United States Supreme Court, held that when "a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.)

Petitioner's claim that appellate counsel was ineffective for failing to argue on appeal that the trial court erred is without merit.

F.    Cruel and Unusual Punishment

Petitioner contends that his sentence of 25 years to life violates the Eighth Amendment because it is disproportionate to his crimes. Petitioner raised this claim on direct appeal to the California Fifth District Court of Appeal. (Lodged Doc. No. 1.) The Court of Appeal denied the claim on the merits in a reasoned decision. Id. Petitioner subsequently raised this claim to the California Supreme Court in his petition for review, which was summarily denied. (Lodged Doc. Nos. 2,3.) Finally, Petitioner raised this claim again in the California Supreme Court by way of a petition for writ of habeas corpus. (Lodged Doc. No. 8.) The petition was summarily denied. (Lodged Doc. No. 9.)

A criminal sentence that is not proportionate to the crime for which a defendant is convicted may indeed violate the Eighth Amendment. In Rummel v. Estelle, 445 U.S. 263, 100

1    S.Ct. 1133 (1980), the Court upheld a life sentence imposed under a Texas recidivist statute for a

2    defendant convicted of obtaining $120.75 by false pretenses, an offense normally punishable by

3    imprisonment for two to ten years. Rummel v. Estelle, 445 U.S. 263, 266, 100 S.Ct. 1133, 1135

4    (1980).  However, because he had two prior felony convictions (for fraudulent use of a credit

5    card and passing a forged check), and had served two prior prison terms, the prosecution chose to

6    proceed under the state's recidivist statute, which carried a life sentence. Id. The Supreme Court

7    held that Rummel's sentence of life imprisonment *with* the possibility of parole did not violate

8    the Eighth Amendment. Id. at 365-266, 100 S.Ct. at 1135. (emphasis added).  The Court noted

9    that Rummel had suffered two separate convictions and terms of imprisonment for each prior,

10   that he would be eligible for parole in twelve years, and that under the Texas recidivist statute,

11   prosecutors retained the discretion not to invoke the statute for "petty" offenders.  445 U.S. at

12   278-81, 100 S.Ct. at 1141.

13        Three years later, the U.S. Supreme Court set forth the criteria for finding a sentence to be

14   cruel and unusual punishment under the federal Constitution and affirmed a decision of the

15   Eighth Circuit holding unconstitutional a sentence of life imprisonment without the possibility of

16   parole for a seven-time nonviolent felony recidivist. Solem v. Helm, 463 U.S. 277, 103 S.Ct.

17   3001 (1983).   Applying the proportionality criteria, the Court concluded that Solem's sentence

18   was grossly disproportionate to his crime of uttering a "no account" check for $100.00, even in

19   light of his prior six nonviolent felony convictions: three for third degree burglary, one for

20   obtaining money under false pretenses, one for grand larceny, and one for driving while

21   intoxicated. Id. at 279-81, 103 S.Ct. at 3004-5.   The Court emphasized that Solem's life

22   sentence was far more severe than the sentence it had considered in Rummel, because Rummel

23   was likely to be eligible for parole in twelve years, while Solem was given no possibility of

24   parole at all. Id.

25        In Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680 (1991), the defendant received a

26   mandatory sentence of life in prison *without* the possibility of parole for possession of more than

27   650 grams of cocaine, his first felony offense.  Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct.

28   2680 (1991) (emphasis added).  The U.S. Supreme Court upheld the sentence, with five justices

1    agreeing, for varying reasons, that the sentence did not violate the Eighth Amendment.  Although

2    the Court did not produce a majority opinion, seven justices favored some manner of

3    proportionality review.  Justice Kennedy, joined by Justices O'Connor and Souter, stated that a

4    noncapital sentence could violate the Eighth Amendment if it was "grossly disproportionate" to

5    the crime, but concluded that courts need not examine the second and third factors of

6    intrajurisdictional and interjurisdictional reviews discussed in Solem, unless "a threshold

7    comparison of the crime committed and the sentence imposed leads to an inference of gross

8    disproportionality."  Id. at 1005.  The Ninth Circuit, adopting Justice Kennedy's concurring

9    opinion in Harmelin, now refers to the test articulated as "the rule of Harmelin."  Andrade v.

10   Attorney General of the State of California, 270 F.3d 743, 756 (9th Cir. 2001).

11        The majority of the justices in the Harmelin court agreed that outside capital punishment,

12   deeming a sentence cruel and unusual punishment is "exceedingly rare" due to the lack of

13   objective guidelines for terms of imprisonment.  Harmelin, 501 U.S. 957, 964, 111 S.Ct. 2680

14   (1991).  The threshold for such an inference of disproportionality is high.  See id. at 1001, 111

15   S.Ct. at 2707 (Kennedy, J. concurring).  Generally, so long as the sentence imposed by the state

16   court does not exceed statutory maximums, the sentence will not be considered cruel and unusual

17   punishment under the Eighth Amendment.  United States v. McDougherty, 920 F.2d 569, 576

18   (9th Cir. 1990).

19        The Harmelin Court concluded that the defendant's sentence did not meet the threshold

20   factor of "gross disproportionality."  Justice Kennedy stressed the serious nature of Harmelin's

21   offense, stating that the offense "threatened to cause grave harm to society" unlike "the relatively

22   minor, nonviolent crime at issue in Solem."  Harmelin v. Michigan, 501 U.S. 957, 1002, 111

23   S.Ct. 2680, 2705 (1991).  Justice Kennedy further noted that the "possession, use, and

24   distribution of illegal drugs represent 'one of the greatest problems affecting the health and

25   welfare of our population.'" and that the quantity of cocaine possessed by Harmelin had a

26   potential yield of between 32,500, and 65,000 doses.  Id.

27        In Lockyer v.  Andrade, 123 S. Ct.1166 (2003), the Supreme Court discussed the current

28   state of Eighth Amendment proportionality review and held that the only clearly established

governing legal principle is that a "gross disproportionality" review applies to criminal sentences for a term of years. Id. at 1173.  Citing extensively to its past cases dealing with criminal sentencing and proportionality under the Eighth Amendment, the Court acknowledged that it has "not established a clear and consistent path for courts to follow." Id.  The Supreme Court held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' frame work is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Id.

In Ewing v. California, 123 S. Ct.1179 (2003), the Supreme Court again reviewed the Supreme Court's Eighth Amendment jurisprudence, and chose to adopt Justice Kennedy's view [7] that:

> [There are] four principles of proportionality review-- the primacy of the legislature; the variety of legitimate penological schemes; the nature of our federal system; and, the requirement that proportionality be guided by objective factors– that inform the final one: The Eighth Amendment does not require strict proportionality between the crime and the sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.

Ewing, at 1186-1187.  In addition to Andrade and Ewing, the Supreme Court has also upheld a life sentence under Texas's habitual offender statute for obtaining $120 by false pretenses, Rummel v. Estelle, 445 U.S. 263 (1980), and a life sentence without the possibility of parole for possession of cocaine.  Harmelin v. Michigan, 501 U.S. 957 (1991).

In describing the circumstances surrounding the sentence imposed upon Petitioner, the Court of Appeal, stated the following:

> Although [Petitioner] portrays himself as a victim of drugs and alcohol, and contends the severity of his criminal behavior has decreased over time, we resist the temptation to stray from the underlying elements of the crime committed.  The record discloses a repeat felon the three strikes law targets.  His lengthy sentence is "based not merely on [his] most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes."  (*Rummel v. Estelle* (1980) 445 U.S. 263, 284.)  Because [Petitioner's] sentence neither offends fundamental notions of human dignity, nor shocks the conscience of this court (*People v. Ingram*, *supra*, 40 Cal.App.4th at p. 1416), we reject [Petitioner's] Eighth Amendment challenge and affirm his sentence.

---

[7]As expressed in his concurring opinion in Harmelin v. Michigan, 501 U.S. 957, 1001 (1991), *citing* Solem v. Helm, 463 U.S. 277, 288 (1983).

1 | (Lodged Doc. No. 1, Opinion, at 3.)

2 |       The state court's finding that the instant case is not materially distinguishable from the

3 | Supreme Court's holding in <u>Rummel</u>, is not contrary to, or an unreasonable application of,

4 | clearly established Supreme Court precedent.  The violent nature of both Petitioner's current and

5 | prior strike convictions demonstrate his continued propensity toward violence, and his sentence

6 | of 25 years to life, with the possibility of parole, does not violate the Eight Amendment

7 | prohibition against cruel and unusual punishment.

8 | ORDER

9 |      Petitioner's motion for discovery and/or appointment of guardian ad litem, filed on

10 | April 8, 2008, is DENIED as MOOT.

11 | RECOMMENDATION

12 |      Based on the foregoing, it is HEREBY RECOMMENDED that:

13 |     1.    The instant petition for writ of habeas corpus be DENIED; and,

14 |     2.    The Clerk of Court be directed to enter judgment in favor of Respondent.

15 |      This Findings and Recommendation is submitted to the assigned United States District

16 | Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

17 | the Local Rules of Practice for the United States District Court, Eastern District of California.

18 | Within thirty (30) days after being served with a copy, any party may file written objections with

19 | the court and serve a copy on all parties.  Such a document should be captioned "Objections to

20 | Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served

21 | and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the

22 | objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

23 | 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time

24 | may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

25 | Cir. 1991).

26 |     IT IS SO ORDERED.

27 | **Dated:**   **November 19, 2008**       **/s/ Dennis L. Beck**
|   |                               UNITED STATES MAGISTRATE JUDGE

28 |